# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DUANE T. JONES #222-466
        Petitioner                 *

       v.                           *     CIVIL ACTION NO. ELH-13-1086

J. PHILIP MORGAN, et al.,            *
        Respondents

## **MEMORANDUM**

Duane Jones, an inmate committed to the custody of the Maryland Division of Correction ("DOC"), filed a petition for habeas corpus relief under 28 U.S.C. § 2241. Jones, who is self-represented, alleges violations of due process, *ex post facto*, and equal protection arising from the way in which the Maryland Parole Commission ("Commission") has calculated his eligibility for parole. *See* ECF 1, as supplemented by ECF 3 ("Motion for Pleading"). He named as respondents the Warden of the Maryland Correctional Training Center ("MCTC") and the Attorney General of Maryland.

The instant petition, as supplemented, is not a model of clarity. Extrapolating from Jones's submissions, the State court pleadings, and respondents' brief, it appears that Jones complains as follows: (1) the Division of Correction improperly calculated his sentences by denying him 563 days' credit awarded by the sentencing court; (2) in determining Jones's eligibility for parole, the Commission wrongfully applied a new policy to him, in violation of due process and the *ex post facto* clause, by requiring him to first serve his 25-year non-parolable sentence day-for-day, without regard to diminution and pre-trial credits earned, before he is considered for parole; (3) the DOC incorrectly aggregated his consecutive sentences into a single term of confinement, thereby depriving him of the benefit of having his diminution credits applied to his individual sentences, presumably in violation of due process and the *ex post facto*

clause; (4) the DOC failed to award him 180 days of good conduct and working credits that he had earned while he was in the custody of the Baltimore County Detention Center; (5) the DOC failed to credit him with 36 days awarded to him by the judge who sentenced him for violation of probation;[1] and (6) he was denied equal protection.

In their answer to the petition, ECF 9, respondents contend that the petition should be denied because Jones's allegations are time-barred and because Jones failed to exhaust his claims in the Maryland state courts. ECF 9. They also argue that the petition sets forth only violations of state law and that Jones's claims are substantively without merit. *Id.* In support of their answer, respondents attached about 23 exhibits.

Jones counters that his petition should not be deemed time-barred, implying that he would have sought federal relief sooner had he known that his state habeas corpus petition was not reviewable on appeal. ECF 11 at 2-3. Further, he contends that he attempted to exhaust his remedies prior to seeking federal relief by pursuing redress by way of state habeas corpus review. *Id.* at 3-4.

**Procedural Background**

On or about January 11, 1989, Jones was convicted in the Circuit Court for Baltimore County of Daytime House Breaking and was sentenced to eight years' incarceration. *See* Case No. 88-Cr-1089.[2] On June 19, 1989, the court suspended the sentence, less time served, and placed the defendant on five years of probation. A bench warrant was issued on February 3, 1992, for violation of probation in 88-CR-1089. At a hearing on March 18, 1992, Jones was

---

[1] Respondents' Exhibit 1 (ECF 9-2) shows that a credit of 34 days was awarded for time served before sentencing.

[2] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=03K88001089&loc=55&detailLoc=K.

found guilty of a violation of probation. The Circuit Court for Baltimore County committed Jones to the DOC on that date (March 18, 1992), to serve eight years, with all but four years suspended, and credit for time served, commencing February 12, 1992. ECF 9-2. This four-year term of confinement carried a maximum expiration date of February 12, 1996. *See* Md. Code (2008 Repl. Vol.), Corr. Servs. Art. ("CS"), § 3-701(2); *see also* DOC Sentence Calculation Worksheet, ECF 9-3.

On October 16, 1992, while Jones was serving his four-year term of confinement, the Circuit Court for Baltimore County committed Jones to the DOC in Case 91-CR-1785, to serve 25 years without parole for Count Six (robbery). In the same case, the court also imposed a 20-year sentence, consecutive to the 25-year term of confinement, on Count Two (Rape, Second Degree), and a 20-year sentence on Count Four (sexual offense, second degree), concurrent with the sentence on Count Two. *See* Respondents' Exhibit 3 (ECF 9-4). The court directed that the 45-year term run consecutive to the four-year sentence imposed in Case 88-CR-1089, and awarded 563 days' credit for time spent in custody prior to sentencing, pursuant to the terms of an earlier version of Maryland law, *i.e.*, Md. Code Ann., Art. 27, § 638C (now Crim. Proc. § 6-218(b)). ECF 9-4.

Respondents have described the method of calculation used to determine the amount of time Jones must serve pursuant to these sentences. To calculate Jones's obligations following the issuance of the consecutive 45-year aggregate sentence in Case 91-CR-1785, the DOC first deducted the 563 days' credit awarded by the court in that case from the maximum expiration date of the four-year sentence imposed in Case 88-CR-1089 (February 12, 1996), which yielded the date of July 29, 1994. The DOC then added the 45-year sentence to that date, resulting in a

3

maximum expiration date of the term of confinement of July 29, 2039. ECF 9-3. Under those calculations, Jones is serving a term of confinement of 47 years and five months, beginning on February 12, 1992 and ending on July 29, 2039. *Id.*

In addition to 2,842 days of good conduct credit, Jones has earned other diminution of confinement credits,[3] including 980 days of special project credits, 1014 days industrial credits, and 88 days of educational credits. Thus far, Jones has forfeited 80 good conduct credits for violating prison rules. ECF 9-5; *see* CS § 3-709. Additionally, Jones has been allowed 58 good conduct credits and 58 special project credits awarded during his custody at a local correctional facility. ECF 9-5; *see* CS §§ 11-503 to 11-506. In sum, Jones has received the benefit of a net total of 4,960 diminution credits.

CS § 7-501(a) states: "[T]he Division…shall grant a conditional release from confinement to an inmate who...is serving a term of confinement of more than 18 months...[and] has served the term or terms, less diminution credit awarded under Title 3, Subtitle 7 and Title 11, Subtitle 5 of this article." Code of Maryland Regulations ("COMAR") 12.02.06.01B(11) defines "mandatory supervision release date" as "the date computed by subtracting the credits which are awarded pursuant to Correctional Services Article, Title 3, Subtitle 7, and Title 11, Subtitle 5, Annotated Code of Maryland, from the maximum expiration date." Based on these provisions, subtracting the total of 4,960 diminution credits earned from the maximum expiration

---

[3] Respondents detail four types of credits that may be earned by Maryland prisoners: good conduct credits, industrial credits, educational credits, and special project credits. *See* CS §§ 3-704 to 3-707. Good conduct credits are deducted "in advance from the inmate's term of confinement," CS § 3-704(a), while the other types of credit are awarded monthly, as they are earned. CS §§ 3-705 - 3-707.

date of July 29, 2039, yields an anticipated mandatory supervision release date of December 29, 2025. ECF 9-5.

On March 17, 2009, Commission employee Ruth Ogle informed Jones that under CS § 7-301(b), he would become eligible for parole after serving the greater of one-fourth of his aggregate sentence of 47 years and five months (a little under twelve years) **or** a period equal to the term during which he was not eligible for parole (twenty-five years). ECF 9-6 (emphasis added). Noting that diminution credits do not affect parole eligibility, Ogle stated that Jones's parole eligibility date would arise in February of 2017, which is twenty-five years after February 12, 1992, the start date of his term of confinement. *Id*.

Jones disagreed with the Commission's calculations, arguing that he should become eligible for parole after serving one-fourth of his aggregate sentence and not, as the Commission intended, after he first completed his 25-year non-parolable term of confinement. On June 25, 2009, he filed a petition for writ of habeas corpus in the Circuit Court for Anne Arundel County in Case 02-C-09-142045. ECF 9-8 and ECF 9-9. The case was transferred to the Circuit Court for Baltimore County and on September 30, 2010, was docketed as Case 03-C-10-011606. ECF 9-10 and ECF 9-11. On October 6, 2010, the petition was denied for failure to comply with the Maryland Rules governing habeas corpus. ECF 9-12. Petitioner noted an appeal to the Court of Special Appeals of Maryland. ECF 9-11.

On October 22, 2010, Jones filed a second petition for writ of habeas corpus in the Circuit Court for Baltimore County, which he twice amended. Petition and amendments, ECF 9-13, 9-16 and 9-17. The petition was not opened as a new case but instead was docketed in the previous habeas matter Case 03-C-10-011606. A court-ordered response was filed on November

30, 2010. Order, ECF No. 9-15. On April 6, 2012, the petition was denied based on arguments set forth in the respondent's answer. Docket, ECF 9-11 and Order, ECF 9-18. Jones noted an appeal to the Court of Special Appeals on April 20, 2012. ECF 9-19. On November 29, 2012, the Court of Special Appeals dismissed Jones's first appeal as moot and not allowed by law. And, on the same date, it dismissed his second appeal. ECF 9-20 and 9-21. Jones filed a petition for certiorari in the Court of Appeals, which was denied on March 25, 2013. ECF 9-23 and 9-24. On April 11, 2013, the Clerk received the instant petition, dated April 9, 2013.

## Discussion

### I.

The Constitution does not create a protected liberty interest in the expectation of early release on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Jago v. Van Curen*, 454 U. S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). Absent a protected liberty interest in parole, a prisoner typically cannot mount a challenge against a state parole review procedure on procedural or substantive due process grounds. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997).

In almost all instances, sentence and diminution credit calculation disputes regarding parole review procedures in a state penal system involve issues of state law and do not give rise to a federal question. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pringle v. Beto*, 424 F.2d 515, 516 (5th Cir. 1970); *see also McCray v. Rosenblatt*, 1994 WL 320212 (4th Cir. July 6, 1994) (per curiam) (unpublished). Although not absolute, a violation of a state law which does

not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)). Where, however, a "claim . . . rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." *Wright v. Angelone*, 151 F. 3d 151, 157 (4th Cir. 1998); *see Williams v. Warden of Maryland Penitentiary*, 209 Md. 627, 628 (1956) (failure to exercise discretion to grant credit for time spent on parole did not deprive prisoner of constitutional right).

Although sentence and diminution credit calculation disputes generally are issues of state law and do not give rise to a federal question, the Supreme Court has held that when a State creates a right to good time credits, due process requires that a prisoner's right should not be "arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Under *Wolff,* once a prisoner has earned good time credits under a state statute that awards mandatory sentence reductions for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. *Id.* at 556-57. Under this precedent, Jones's due process claim may be examined here.

Respondents do not dispute that Jones will be fully credited for the 563 days spent in custody prior to conviction and sentencing. Therefore, the court will not consider whether the denial of such credits might give rise to a viable due process claim. Moreover, given the limited role of the federal courts with regard to state sentence implementation, Jones's other claims regarding the DOC's failure to award diminution credits earned while he was in pretrial custody or awaiting probation revocation (grounds 4 and 5) also will not be reviewed. However, I will

consider Jones's other due process claims, discussed, *infra*.[4]

Jones's sixth claim – that he has been denied equal protection – also fails, as he has not presented any factual predicate. Moreover, prisoners are not a suspect class. *See Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997). And, in any event, Jones does not suggest that he is being treated differently than other Maryland prisoners with regard to parole eligibility or sentence computation.

Finally, Jones's *ex post facto* argument is subject to federal scrutiny. Under Article I, §10 of the Constitution, states may not pass any "*ex post facto* Law." This *ex post facto* clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *See Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In addition, it bars a retroactive enactment that increases the punishment for a crime after it has been committed. *See Garner v. Jones*, 529 U.S. 244, 249 (2000); *see also Jones v. Murray*, 962 F.2d 302, 309 (4th Cir. 1992) (same). In the context of parole eligibility, the Supreme Court has examined whether a statute changing parole eligibility criteria violates the *ex post facto* clause. *See California v. Morales*, 514 U.S. 499, 513-14 (1995).

## II.

The merits of Jones's claims concerning due process and *ex post facto* violations (grounds 2 and 3) may be examined if exhausted in the state courts, as required under 28 U.S.C. § 2254(b). *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly

---

[4] Respondents indicate that Jones has received these credits. In any event, he may raise such complaints by way of state habeas corpus proceedings or a motion to correct illegal sentence. *See Williams,* 209 Md. at 628; *see also* Md. Code, § 3-702 of the Courts and Judicial Proceedings Article.

administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns,* 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to 2241 petition challenging civil commitment). Jones's claims appear to have been exhausted when denied by a State circuit court on April 6, 2012, and thus may be considered here.

Jones signed the instant habeas corpus petition on April 9, 2013. Respondents argue that the petition should be dismissed because it was filed three days beyond the one-year limitations period provided in 28 U.S.C. § 2254(d). Respondents provide no legal citation to support their position that a § 2241 petition attacking the execution of a sentence is subjected to the statutory limitations period imposed on those seeking to overturn convictions under § 2254. The time-bar argument is rejected under the facts of this case, leading to review of the merits of Jones's remaining claims.

In *Morales*, 514 U.S. at 513-14, the Court held that a California statute changing parole eligibility criteria did not violate the *ex post facto* clause because those affected did not have a reasonable expectation of being paroled under either the old or the new eligibility criteria. Thus, a court examining the constitutionality of a statutory change must determine "whether it produces a sufficient risk of increasing the measure of punishment ...." *Morales,* 514 U.S. at 509.

Jones complains that the DOC is improperly aggregating all of his sentences into a single term of confinement beginning on February 12, 1992, and ending on July 29, 2039. He implies that the 1991 amendment to Art. 27, § 700, the statutory predecessor of CS §§ 7-301 *et seq.*, is an *ex post facto* law, and he suggests that the amendment detrimentally changed the manner in which diminution credits are allowed.

9

Examination of the statutes affecting Jones's parole eligibility under Maryland law is in order. When Jones was arrested on April 2, 1991, Md. Code Ann. (1985 Cum. Supp.), Art. 27, § 700(b) provided:

> An inmate shall be allowed an initial deduction from the period of the commitment or sentence, subject to the inmate's future good conduct. This deduction shall be calculated at the rate of 5 days for each calendar month, and on a prorated basis for any portion of a calendar month, within the period **between the first day of commitment to the custody of the Commissioner and the last day of the inmate's maximum term of confinement.** (Emphasis added).

The 1991 amendment to that statute added language defining "term of confinement:"

> In this section, "term of confinement" means:
>
> (1) the length of the sentence for a single sentence; or
> (2) the period from the first day of the sentencing beginning first through the last day of the sentence ending last for:
>     (i)   concurrent sentences;
>     (ii)  partially concurrent sentences;
>     (iii) consecutive sentences; or
>     (iv)  a combination of concurrent and consecutive sentences[5]

The 1991 amendment, effective July 1, 1991,[6] also provided (emphasis added):

> (d) (1) An inmate shall be allowed a deduction *in advance* from the *inmate's term of confinement*, subject to the inmate's future good conduct.
> (2) This deduction shall be calculated at the rate of 5 days for each calendar month, and on a prorated basis for any portion of a calendar month, *from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement.*

Jones suggests that prior to July 1, 1991, the DOC released prisoners from one sentence to another, and that § 700 mandated the application of diminution credits to individual sentences,

---

[5] Maryland's statutory compilations have been restructured. Art. 27, § 700 is the statutory predecessor to CS § 7-301 *et seq.* Like its precedessor, CS § 3-701(a)(2)(iv) continues to define "term of confinement" in relevant part as "[t]he period from the first day of the sentence that begins first through the last day of the sentence that ends last, for. . . a combination of concurrent and consecutive sentences."

[6] *See* Ch. 354 of the Acts of 1991, effective July 1, 1991.

not to terms of confinement. Respondents argue that this was not the case, and that the amendment to § 700 did not change the manner in which good conduct credits are allowed. Respondents contend that the pre-amendment statute, like its present-day counterpart, mandates that an inmate receive good conduct credits 1) on a single sentence if the inmate is serving a single sentence, or 2) on the aggregate term of his sentences, if he is serving more than a single sentence.

The court concurs. Had the legislature intended that inmates receive diminution credits separately on each sentence before 1991, it would not have used the language "*between the first day of commitment to the custody of the Commissioner and the last day of the inmate's maximum term of confinement*" (emphasis added) in the pre-amendment version of the statute. Examination of the legislative history of the amendment does not suggest a change in the standard for allowing good conduct credit. One of the purposes of the act was to alter the standard for allowing credits for "work performance" (industrial credit), indicating a statutory intent that good conduct credits be applied to terms of confinement.[7]

Respondents argue that the statute has always mandated that diminution credits are to be awarded with respect to an inmate's total period of confinement, rather than applied to individual sentences. The court agrees. Because the 1991 amendment to Art. 27, § 700 did not change how

---

[7] The purpose clause of House Bill 354 of the 1991 legislative session states:

> FOR the purpose of providing for the application of credits for certain inmates serving a certain sentence in a foreign jurisdiction; altering the standard for allowing credits for work performance; adding clarifying language; defining terms; and generally relating to the diminution of sentence and mandatory supervision of certain inmates.

Nothing in this language denotes sufficient statutory modification suggesting an *ex post facto* impact negatively affecting the computation of Jones's good conduct credit.

diminution credits are to be applied, it is not an *ex post facto* law. *See Collins*, 497 U.S. at 41 ("The constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.").

Based on the statutory scheme noted above, it becomes apparent that Jones has received all that he is due. On October 16, 1992, Jones was sentenced to serve 25 years without parole, consecutive to the sentence he was then serving. ECF 9-4. Jones's 25-year non-parolable sentence started on July 29, 1994, after he completed the earlier sentence (February 12, 1996 – 563 days = July 29, 1994). ECF 9-3. In determining Jones's eligibility for parole, the Commission is treating his 25-year non-parolable sentence as though it started on February 12, 1992, the starting date for his earlier term of confinement for the Daytime House Breaking offense, and it has scheduled him for his first parole hearing in July 2017, twenty-five years after February 1992. ECF No. 9-6 and -7. In this light, the 25-year consecutive, non-parolable sentence is, in effect, not actually consecutive.

This determination, however, does not fully resolve Jones's claim of *ex post facto* violation. In the "Motion for Show Cause" attached to his petition, Jones references CS § 7-301(c), a statutory provision that applies to crimes committed on or after October 1, 1994 that requires a prisoner to serve at least one-half of his term for violent crimes before becoming eligible for parole. Jones believes the Commission is applying this provision to him in violation of the *ex post facto* clause by requiring him to serve one-half of his term before he is eligible for parole. Respondents argue that Jones, whose arrest predates October 1, 1994, is incorrect; the

Commission is applying CS § 7-301(b) to Jones,[8] and is requiring him to serve his 25-year non-parolable sentence before he is eligible for parole, because the length of his non-parolable sentence (25 years) is greater than one-fourth of his term (a little under twelve years). ECF 9-6.

Under CS § 7-301(b), Jones must serve a *minimum* of one-fourth of his aggregate sentence ("total term of confinement") before becoming eligible for parole. Jones's insistence that he became eligible for parole at the one-quarter mark of his total term of confinement ignores a pre-existing statute that mandates that a prisoner may not be paroled while serving a non-parolable sentence.

The Commission calculates parole eligibility in this manner because, in 1992, the legislature made clear that for parole eligibility purposes, if an inmate is serving multiple sentences, the non-parolable sentence should be treated as though it starts at the beginning of the inmate's term of confinement. *See* Ch. 589 of the Acts of 1992, effective October 1, 1992, now found at CS § 7-301(b). In other words, even if a court directs a non-parolable sentence to be served consecutive to a parolable sentence, the defendant must serve "a period equal to the term during which the inmate is not eligible for parole" before becoming eligible for parole -- or one-fourth of the entire term, if that is longer. CS § 7-301(b). The statute is ministerial and simply

---

[8] CS § 7-301(b) provides: "Except as provided in subsection (c) of this section [which provides for parole eligibility at one-half of the aggregate sentence for violent crimes committed on or after October 1, 1994], if an inmate has been sentenced to a term of imprisonment during which the inmate is eligible for parole and a term of imprisonment during which the inmate is not eligible for parole, the inmate is not eligible for parole consideration under subsection (a) of this section until the inmate has served the greater of: (1) one-fourth of the inmate's aggregate sentence; or (2) a period equal to the term during which the inmate is not eligible for parole."

The Commission began calculating parole eligibility in this manner after the legislature made clear that for parole eligibility purposes, if an inmate is serving multiple sentences, the non-parolable sentence should be treated as though it starts at the beginning of the inmate's term. *See* Ch. 589 of the Acts of 1992, effective October 1, 1992, now found at CS § 7-301(b).

requires the Commission to treat any non-parolable sentence as though it is being served at the beginning of the term; it does not "increase the punishment for criminal acts," *Collins*, 497 U.S. at 43, and it may therefore be applied retroactively to inmates whose crimes occurred before its enactment.

Jones's due process claim fares no better. Under *Wolff*, it appears that Jones has accrued a liberty interest in the 2,842 days of good conduct credit (minus any days lost due to adjustment convictions), pursuant to CS § 3-704. Jones does not dispute that he will receive good conduct credit. Rather, he complains that the credit will be applied against his aggregate sentences only after he first serves his 25-year non-parolable sentence,[9] thus delaying parole consideration.

Maryland law does not create a protected liberty interest in the expectation of early release on parole. There is no requirement that a parole hearing be held; rather, the Commission is merely required to ask the DOC

> to make an investigation for inmates confined in a State correctional facility that will enable the Commission to determine the advisability of granting parole to an inmate who: (i) has been sentenced under the laws of the State to serve a term of 6 months or more in a correctional facility; and (ii) has served in confinement one-fourth of the inmate's aggregate sentence.

CS § 7-301(a).[10] Because good time credits are not used for the purpose of determining parole eligibility for those serving determinate sentences, Jones has no "right" to use such credits in that

---

[9] Maryland expressly precludes consideration of diminution credits in determining parole eligibility for those with determinate sentences of confinement. *See Witherspoon v. Maryland Parole Comm'n,* 149 Md. App. 101, 105, 814 A.2d 123, 125 (2002); CS § 7-301(a)(1)(ii) and (a)(2). Thus, under Maryland law, none of Jones's diminution credits plays a role in the Commission's determination of his parole eligibility, because he is not serving a life sentence.

[10] Under Maryland law, the Commission may decline to hold a parole hearing if such hearing would serve no useful purpose. *See* COMAR 12.08.01.17A.(1)(c).

manner, and thus has no constitutionally protected right with regard to this claim.[11] *See Waddell v. Department of Corrections,* 680 F.3d 384, 395-96 (4th Cir. 2012) (practice of applying earned good time credit for some purposes, but not for reduction of life sentence, neither violated due process nor gave rise to *ex post facto* claim); *see also Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (common practice of Board of Prisons was insufficient to create liberty interest where statute neither required nor prohibited such practice).

Based on the foregoing analysis, Jones is not entitled to relief. For the reasons stated herein, the court will deny and dismiss the petition. A certificate of appealability will not issue because Jones has not made a "substantial showing of the denial of a constitutional right."[12] A separate Order follows.

Date: <u>April 28, 2014</u>              /s/_____
                                        Ellen Lipton Hollander
                                        United States District Judge

---

[11] Maryland case law suggests the statutes governing parole consideration provide no liberty interest until parole is granted and the prisoner signs the Order for Parole accepting the conditions of parole release. *See Patuxent Institution Board of Review v. Hancock,* 329 Md. 556, 620 A.2d 917 (1993); *Lomax v. Warden, Maryland Correctional Training Center,* 120 Md. App. 314, 707 A.2d 395 (1999).

[12] When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir.) (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). Denial of a certificate of appealability in the district court does not preclude Delaney from requesting a certificate of appealability from the appellate court.